1    **WO**

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE DISTRICT OF ARIZONA**

8

9    Puente, *et al.*,                              No. CV-18-02778-PHX-JJT

10               Plaintiffs,                        **ORDER**

11   v.

12   City of Phoenix, *et al.*,

13               Defendants.

14

15          At issue is the admissibility of expert testimony provided by Mr. Roger Clark on

16   behalf of Plaintiffs. The Court considers Defendants' Motion to Exclude Opinions of Roger

17   Clark Under Rule 702 and *Daubert* (Doc. 236, Mot.), Plaintiffs' Opposition (Doc. 287,

18   Opp'n), and Defendants' Reply (Doc. 303, Reply). The Court finds this matter appropriate

19   for decision without oral argument. *See* LRCiv 7.2(f). The Court will grant in part and deny

20   in part Defendants' Motion for the reasons set forth below.

21   **I.     LEGAL STANDARD**

22          Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that

23   any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm.,*

24   *Inc.* (*Daubert*), 509 U.S. 579, 589 (1999). "Evidence is relevant if it has any tendency to

25   make a fact more or less probable than it would be without the evidence and the fact is of

26   consequence in determining the action." Fed. R. Evid. 401. The trial court must first assess

27   whether the testimony is valid and whether the reasoning or methodology can properly be

28   applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this

assessment include: whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the methodology has been generally accepted within the relevant professional community. *Id.* at 593–94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

The *Daubert* analysis is applicable to testimony concerning scientific and non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *U.S. v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). An expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire Co.*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

## II.   ANALYSIS

In their Motion to Exclude, Defendants offer two arguments in support of excluding Mr. Clark's testimony: (1) Mr. Clark does not have sufficient relevant expertise to render his opinions, and (2) Mr. Clark's testimony is unhelpful and unreliable because it

1    improperly characterizes facts and includes legal and conclusory opinions. The Court will

2    examine each of these arguments in turn.

3          **A.**     **Relevant Expertise**

4          Mr. Clark is Plaintiffs' police practices expert. Defendants argue that Mr. Clark is

5    unqualified to testify as an expert under Rule 702, which requires a witness to be qualified

6    "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The witness

7    must be an expert "in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

8          Plaintiffs have satisfactorily demonstrated that Mr. Clark has experience in the

9    relevant field. One of the central issues in this matter is the appropriate use of police force

10   to control an assembly and the related police policies and procedures. Plaintiffs show that

11   Mr. Clark was a police officer in the Los Angeles Sheriff's Department for 27 years; holds

12   an advanced certificate from the California Peace Officer Standards and Training

13   ("POST") program and graduated from POST Command College; trained other officers in

14   police tactics; commanded the North Regional Surveillance and Apprehension Team for

15   six years; developed procedures within the Emergency Operations Bureau for appropriate

16   police response during natural disasters and civil disorders; and was a line officer during

17   the East LA riots, a platoon leader during the Rodney King riots, a commanding officer

18   during multiple Rose Parades, and the intelligence officer for the 1984 Olympic Games.

19         Mr. Clark's experience and training are certainly relevant to issues in this case. To

20   the extent Defendants argue that Mr. Clark's experience is outdated, they will have the

21   opportunity to cross-examine him. But in this instance, the age of Mr. Clark's experience

22   and training does not make them irrelevant.

23         Defendants also complain that Mr. Clark has not used the precise munitions the

24   Phoenix Police Department ("PPD") used at the August 22, 2017 rally at issue in this case.

25   To begin with, Plaintiffs do demonstrate that, during the Rodney King riots, Mr. Clark

26   commanded a platoon using tear gas and 40-millimeter canister launchers, which the PPD

27   used on the crowd at the rally. Moreover, it is not required that Mr. Clark used the same

28

1   munitions in order for him to be qualified to testify on police policies and procedures in

2   controlling a mass gathering.

3          The Court also disagrees with Defendants' contention that Mr. Clark is nothing

4   more than a "hired gun" in this case. While a professional expert hired to testify on a wide

5   range of topics with great frequency may indeed not pass muster as an expert in a specific

6   field, *see Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *3

7   (D. Ariz. Feb. 7, 2018), Mr. Clark's experience and training are relevant to the issues in

8   this particular matter. His frequent work as a consultant and expert witness is not

9   disqualifying in and of itself. Again, if anything, Defendants' concerns at this point amount

10   to subject matter for cross examination, but they are not sufficient for the Court to deem

11   Mr. Clark unqualified to testify in this matter in light of his substantial relevant experience

12   and training.

13          **B.      Helpfulness and Reliability of Testimony**

14          Defendants also contend that certain testimony of Mr. Clark should be excluded

15   because it consists of legal conclusions, fact characterizations, and/or conclusory

16   statements.

17          **1.      Legal Conclusions**

18          Defendants' first contention, that Mr. Clark offers impermissible legal conclusions,

19   raises the question of the extent to which an expert may offer opinions on matters that

20   should lie with the jury. Federal Rule of Evidence 704 allows an expert to express an

21   opinion on an ultimate issue to be decided by the jury, but the Ninth Circuit has made clear

22   that the propriety of an expert opinion on ultimate issues does not extend so far as to permit

23   an expert to offer legal conclusions. *Muhktar v. Cal. State Univ., Hayward*, 299 F.3d 1053,

24   1065 n.10 (9th Cir. 2002) ("However, an expert witness cannot give an opinion as to her

25   legal conclusion, *i.e.*, an opinion on an ultimate issue of law.").

26          As the Court has found in a previous case involving Mr. Clark's testimony, to the

27   extent that Defendants seek to preclude Mr. Clark from testifying as to what use of force

28   is justified, or offering an opinion that a particular amount of force was not justified under

1    the facts of this case, Defendants' request is denied. In addition, in light of Mr. Clark's
2    experience and training in police practices and standards and the use of force generally,
3    Mr. Clark may opine about whether the use of munitions were justified under the
4    circumstances. Defendants have not established that such testimony must be excluded or
5    that this testimony constitutes a legal conclusion. Indeed, many of the examples from Mr.
6    Clark's expert report that Defendants cite in their Motion as improper legal conclusions are
7    not. For example, when Mr. Clark testifies that the use of force on an assembly by police
8    officers should not be indiscriminate and should take into account the assembly's right to
9    protest, or that police officers are trained to use force pursuant to their legal authority, or
10    that tools such as unlawful assembly announcements are available to police officers to
11    control a protest, Mr. Clark is not offering improper legal conclusions.

12        However, to the extent that Mr. Clark actually does offer legal conclusions, his
13    testimony is not permitted. While Mr. Clark may freely opine that the officers should not
14    have acted in the manner that they did, or that they should have done something else, he
15    must not volunteer an opinion that the officers acted unconstitutionally or exercised
16    excessive force. For example, where Mr. Clark opines that use of force on the crowd was
17    "a violation of constitutional rights" (Doc. 237-2, Mot. Ex. 1 at 16, Opinion 6), the opinion
18    is an improper legal conclusion,[1] and the Court will exclude all legal conclusions from Mr.
19    Clark's testimony.

20                    **2.      Fact Characterizations**

21        Defendants next argue that Mr. Clark improperly characterizes facts that a jury can
22    interpret without the aid of an expert witness. As the Court stated above, Rule 702 provides
23    that an expert qualified by experience may testify in the form of opinion if his or her
24    experiential knowledge will help the trier of fact to understand evidence or determine a fact
25    in issue. *See Daubert*, 509 U.S. at 579.

26        The examples of Mr. Clark's fact characterization that Defendants provide are
27    simply disagreements between Plaintiffs and Defendants about what the facts show. For

28    ───────────────
     [1] Plaintiffs concede as much in their Response. (Opp'n at 12 n.4.)

example, in challenging Mr. Clark's opinion that PPD used indiscriminate force on the entire crowd, Defendants state that the record shows that "[o]fficers' uses of force were measured, largely targeted, and proportional to escalating criminal behavior." (Mot. at 14.) This fact is clearly and genuinely disputed between the parties. The Court will not exclude an opinion of Plaintiffs' expert simply because it does not align with Defendants' opinion. The issue here is whether the expert's opinion, based on sufficient data, is helpful to the jury in understanding the evidence. Defendants have not demonstrated that Mr. Clark's testimony is not based on sufficient data or is unhelpful in this regard; indeed, the Court will allow Defendants' experts to offer their opinions similarly. *See, e.g.*, Fed. R. Evid. 702 Advisory Comm. Notes (2000) (stating "experts sometimes reach different conclusions based on competing versions of the facts," which is not a basis for exclusion in and of itself). Moreover, as the Court has already stated, Defendants will have the opportunity to cross-examine Mr. Clark to challenge the weight of his opinions.

### 3. Conclusory Statements

Finally, Defendants contend that many of Mr. Clark's statements are conclusory. Under *Daubert* and its progeny, the Court must ensure that expert testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

Defendants again point largely to disagreements they have with Mr. Clark's opinions rather than identifying missing sources or bases for his opinions. For example, Defendants take issue with Mr. Clark's opinions that it was improper for police officers to use tear gas before they declared an unlawful assembly and that PPD's policies regarding the use of tear gas are insufficient. (Mot. at 18.) Defendants argue that no "accepted body of knowledge require PPD to have more policies than it does." (Mot. at 18.) Ironically, Defendants' argument is conclusory. Mr. Clark states that his opinions are based on his training and experience, which are identified with specificity in his reports, as well as publications including the Police Executive Research Forum ("PERF") guidelines titled "Handling Large, Preplanned Events, Recommendations and Preparations for the 2016

1   National Political Conventions." (Doc. 237-2, Mot. Ex. 1 at 11–13.) Defendants have thus

2   not demonstrated that Mr. Clark's opinions should be excluded as conclusory, and

3   Defendants can challenge the opinions through cross-examination.

4       Accordingly, the Court will grant Defendants' Motion to the limited extent reflected

5   above, but the Motion is otherwise denied.

6       **IT IS THEREFORE ORDERED** granting in part and denying in part Defendants'

7   Motion to Exclude Opinions of Roger Clark Under Rule 702 and *Daubert* (Doc. 236), as

8   reflected in this Order.

9       Dated this 31st day of March, 2021.

10

11      Honorable John J. Tuchi
        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28